THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARTIN L. GIBBS, Defendant-Appellant.

Third District   Nos. 3—91—0385 through 3—91—0387 cons.

Opinion filed April 8, 1992.

Kenneth A. Kozel, of Petz & Kozel, of La Salle, for appellant.

Marc Bernabei, State's Attorney, of Princeton (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial, the defendant, Martin Gibbs, was convicted of aggravated battery, driving with a revoked license, and driving under the influence of alcohol. He was sentenced to concurrent terms of two years for aggravated battery and 364 days for each of the two driving offenses. On appeal, he contends the trial court erred by: (1) admitting into evidence testimony regarding the defendant's prior criminal conduct of resisting and striking a police officer; and (2) by denying the defendant's motion to sever the aggravated battery charge from the traffic-related charges. We reverse.

At trial, Officer Eric Beach testified that on December 31, 1990, he was on patrol when the defendant's car passed his vehicle in a no passing zone. Beach then paced the vehicle and determined that it was travelling at 62 miles per hour. As the car approached a trailer park, Beach activated his flashing red lights. The car then proceeded to stop in the trailer park next to the first trailer.

Beach stopped his car and exited his vehicle just as the defendant was exiting his vehicle. Beach testified that one week prior he had stopped the defendant and issued a citation for violating his restricted driver's permit. The record showed the defendant's driver's licence had been revoked in 1987, but that on December 21, 1990, he had been given a restricted driving permit which enabled him to drive between 6 a.m. and 6:30 p.m. As the defendant proceeded around his car towards the trailer door, Beach ordered him to stop. The defendant obliged but began to walk menacingly towards Beach. When the defendant was about 8 to 10 feet from Beach, the defendant said "I'm going to show you how tough you are." According to Beach, the defendant then delivered a right kick directed at the officer's groin area and followed immediately with an attempt to punch the officer in the face. Beach deflected the kick with his left hand, while also deflecting the punch although it grazed the side of the officer's hand. At that point, their bodies made contact and the two fell to the ground.

According to Beach, he fell backwards and the defendant fell on top of him. After about 30 seconds, Beach directed a male bystander to pull the defendant off him. Beach informed the defendant that he was under arrest, told the defendant to remain where he was, and called for assistance. The defendant, ignoring Beach's orders, went inside his trailer.

A group of police officers from various surrounding communities arrived at the scene. In attempting to subdue the defendant, the officers were confronted with the defendant wielding a beer bottle. After a brief scuffle with the defendant, the officers arrested him and transported him to jail.

The defendant presented three witnesses to testify on his behalf. The gravamen of their testimony was that Beach and the defendant fell because Beach pulled the defendant towards him causing the two of them to slip on the icy road. The witnesses recalled that they were only two feet away from Beach and the defendant. The witnesses also indicated that after a mere five seconds they helped both Beach and the defendant up from the ground at which point the defendant went into his trailer.

The defendant presented further evidence indicating he sustained various injuries as a result of the allegedly rough treatment given him by the arresting officers. The witnesses testified the police hit the defendant with a flashlight even though the defendant did not resist in any way. According to the witnesses, the defendant's face was bloodied and bruised, and he suffered a black eye as a result of the alleged treatment administered by the arresting officers.

On rebuttal, the State presented evidence of an incident involving the defendant in 1982. Jeffrey Fowler testified that on May 30, 1982, he was a police officer in Sandwich, Illinois. On that date, Fowler responded to a call from Officer Goetz regarding a stopped vehicle. Arriving at the scene, Fowler encountered a large and boisterous crowd telling the police to leave the defendant and another man alone. Fowler learned that the defendant was stopped for speeding but refused to post bond. While Fowler and another officer escorted the defendant back to the police car, the defendant resisted. The officers placed the defendant on the hood of the car and handcuffed him. In the process, the defendant kicked Fowler.

At the police station, Fowler testified, the defendant was "really violent." Fowler handcuffed the defendant to a post and monitored him. After 10 minutes had elapsed, Fowler asked the defendant if he had calmed down to which the defendant replied that he had, thus allowing Fowler to remove the handcuffs. As Fowler attempted to commence the booking process, the defendant punched him in the jaw.

The jury found the defendant guilty of all three charges. The trial court denied the defendant's motion for a new trial and this appeal follows.

We first address whether the trial court erred in allowing into evidence testimony of the defendant's prior criminal conduct of resisting and striking a police officer. Evidence of other crimes or wrongful conduct is not admissible to show the defendant's character or propensity to commit crime or wrongful acts. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 485 N.E.2d 1292.) Where evidence has no value beyond the inference that the defendant has a propensity for the crime charged, the evidence is excluded. The underlying rational is that such evidence is objectionable not because it has no appreciable probative value, but because it has too much. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 485 N.E.2d 1292.) The law distrusts the inference because a man has committed other crimes, he is more likely to have committed the crime charged. *People v. Romero* (1977), 66 Ill. 2d 325, 362 N.E.2d 288.

However, evidence of other crimes is admissible if it is relevant for any purpose other than to show the defendant's character or propensity to commit crime. (*People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840.) Thus, evidence of the commission of other crimes is admissible if it is relevant to prove *modus operandi*, motive, knowledge, intent, absence of mistake or accident, or that the crime charged was part of a common design, scheme, or plan of the defendant. *People v. Kissinger* (1983), 116 Ill. App. 3d 826, 452 N.E.2d 615.

In the instant case, the State argues the evidence of the prior incident was admitted for the limited purpose of establishing the defendant's intent as well as to prove the absence of innocent mistake or accident. Specifically, the State argues the defense presented was that the incident resulted from an innocent frame of mind on the defendant's part and that given the conflicting evidence presented in the case, the defendant's intent became the controlling issue.

The record shows the trial court, by allowing the prior incident into evidence over the defendant's vehement objection, appears to have mistakenly applied the so called "Montgomery rule" established in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. The court in *Montgomery* held that prior convictions may be admitted if (1) the prior offense was punishable by imprisonment in excess of one year or involved dishonesty, and (2) if either the conviction or the release from confinement occurred within the preceding 10 years. If these two requirements are met, the trial court must then weigh the probative value of the evidence against what prejudicial effect the evidence might have on the trier of fact. *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.

After recognizing the trial court's apparent confusion, the State correctly informed the trial court that this case did not involve a "Montgomery type" situation because the defendant did not testify. Instead, the State argued the evidence was being offered to prove intent and the absence of accident. In ruling on the matter, the trial court made the following observation:

> "THE COURT: I'm not having any problem with this other that [*sic*] the age of the thing is legally admissible. The only question, does the court want to use his discretion."

After further argument, the trial court stated in response to the defendant's contention concerning the fact that the defendant could have been impeached with this evidence had he taken the witness stand:

> "We're not talking about that, and even then the State would be asking to have this considered as evidence of intent other than just impeachment."

Thereafter the trial court ruled as follows:

> "THE COURT: I'll have to allow it, it's in the *Montgomery* period and it does go to intent. I will allow it."

The above colloquy shows the trial court improperly relied upon the *Montgomery* rule in making its decision. Moreover, as to the State's claim that the evidence was presented to show intent and ab-

sence of innocent mistake or accident, we note that no claim of accident was made by the defendant.

Furthermore, it is well established that evidence of another offense may be used only when the other offense has some threshold similarity to the crime charged. (*People v. Illgen* (1991), 145 Ill. 2d 353, 583 N.E.2d 515.) It is this similarity which increases the relevance of the evidence and ensures that it is not being used solely to establish the defendant's criminal propensities. (*People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59.) Where evidence of prior bad acts is offered to prove *modus operandi* or that the crime charged was part of a common design or plan, there must be a high degree of identity between the facts of the crime charged and the other offense in which the defendant was involved. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821.) The two offenses must share such distinctive common features as to earmark both acts as the handiwork of the same person. *People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821.

■ We find that the 1982 incident and the incident involved in the instant case do not share sufficient similarities to satisfy the other crimes rule. In *People v. Illgen* (1991), 145 Ill. 2d 353, 583 N.E.2d 515, the trial court properly admitted evidence of similar criminal conduct committed against the victim to show the defendant's intent. However, the defendant in *Illgen* engaged in such conduct against his wife over a period of 19 years and such incidents involved a pattern of beatings to the victim's head, concluding with the defendant telling others that the victim had hit her head on a door or some other object.

In contrast, the prior incident does not demonstrate *modus operandi* or that the crime charged in this case was part of a common design or plan. Two incidents over a period of eight years involving the defendant engaged in a scuffle with a police officer after an arrest does not warrant application of the other crimes rule. It is apparent that the evidence might lead a jury to conclude that the defendant has a propensity to assault police officers which is precisely the reason why such evidence must be excluded. We conclude, therefore, admission of the evidence was error.

■ We next address whether the trial court erred in denying defendant's motion to sever the aggravated battery charge from the traffic charges. In a ruling on a motion to sever, the trial court is clothed with substantial discretion (*People v. Peterson* (1982), 108 Ill. App. 3d 856, 439 N.E.2d 1103), and absent an abuse of discretion, the trial court judgment will not be reversed on appeal. (*People v. White*

(1984), 129 Ill. App. 3d 308, 472 N.E.2d 553.) Among the factors to be considered in determining whether to sever charges for trial include the proximity of time and location of the various charges and the identity of evidence which would be presented to prove each charge. *People v. White* (1984), 129 Ill. App. 3d 308, 472 N.E.2d 553.

Section 111—4(a) of the Code of Criminal Procedure of 1963 provides:

> "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are based on the same act or on 2 or more acts which are part of the same comprehensive transaction." Ill. Rev. Stat. 1989, ch. 38, par. 111—4(a).

In the instant case, the defendant asserts that after becoming aware during discovery that the State would attempt to impeach him with evidence of the 1982 incident, he moved to sever the traffic charges from the aggravated battery charge because the other crimes evidence was wholly unrelated to the traffic charge and would only serve to further prejudice the defendant's case. However, because we have determined that the other crimes evidence should not be allowed into evidence, the danger of prejudice to the defendant on remand no longer exists. Accordingly, an economy of time will result from trying the cases together. See *People v. Peterson* (1982), 108 Ill. App. 3d 856, 439 N.E.2d 1103.

Finally, the defendant asserts that he was not proven guilty beyond a reasonable doubt. After reviewing the record in the instant case, we conclude that a rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

For these reasons, we reverse the judgment of the circuit court of Bureau County and remand this cause for a new trial consistent with this opinion.

Reversed and remanded.

BARRY, P.J., and SLATER, J., concur.